KELLY *v.* STATE.

Crim. 3943

Opinion delivered September 23, 1935.

*Oscar Barnett,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

BAKER, J.   Beulah Kelly was indicted by the grand jury of Cleburne County, charged as an accessory before the fact to the robbery of C. B. Chamness by J. A. Nahlan. She was tried on the 7th day of March, convicted and sentenced to three years in the penitentiary.   Only three questions are raised upon this appeal.

It is contended (1) that the court erred in permitting the judgment of conviction of Jack Nahlan to be offered in evidence, (2) the court erred in giving one certain instruction to the jury, and (3) the court refused to direct a verdict of acquittal.

The matters raised upon this appeal will be treated in the order stated.

The matter argued in appellant's brief in regard to the judgment of conviction of Jack Nahlan, referred to in the indictment as J. A. Nahlan, arises out of the form of verdict returned in that case by the jury.

"We, the jury, find the defendant guilty, and fix his punishment at a term of five years in the Arkansas penitentiary."

It must be observed that this form of verdict does not show that Nahlan was convicted of robbery. The record however discloses the fact that the circuit clerk of Cleburne County was offered as a witness by the State; that he identified and offered in evidence the judgment appearing in circuit court record No. 8, at page 134, reciting the fact of the trial and conviction of Jack Nahlan for robbery.

At the time this record was offered in evidence, the objection actually made by the defendant was that the verdict was "hearsay evidence, in that it was a condensed conclusion of the twelve men composing the jury."

It must be observed from the foregoing that there was offered in evidence, not merely the verdict of the jury, but the judgment of the court rendered upon the verdict, and which, of course, included the verdict. Whatever suggestion of objection that may have thought to have been proper on account of the form of the verdict, must be conceded and be considered as purely technical and collateral. The proposition of a general verdict and its effect was discussed by us in a recent case. *Gribble* v. *State*, 189 Ark. 805, 808, 75 S. W. (2d) 660.

Whatever defect existed in the verdict, if any, did not render the judgment invalid, and the judgment, which included the verdict, was competent evidence. There was therefore no error in its admission.

The second matter urged or alleged as error is that after the jury had for a time considered the cause, it returned into court and asked for additional instructions. One instruction was then given over the objection of the appellant: "You are instructed that you should consider all of the facts and circumstances both before and after the commission of the crime of robbery in determining whether or not the defendant is guilty of the crime with which she is charged."

The particular objection made to this instruction was that the jury was directed to consider circumstances or

matters occurring after the commission of the crime. This is argued by learned counsel as inconsistent with the charge made against the appellant, that she was an accessory before the fact, and, if we understand the force of the argument, it is also urged, with some degree of reason, that the jury might have understood from this instruction that it could convict the appellant for criminal conduct, of which she might have been guilty after the robbery was committed by Nahlan. We are unwilling to say, and do not say, that there are no facts or circumstances, or even conduct, after the commission of the crime, that might not have been explanatory of conduct prior to its commission, and therefore was admissible in evidence.

No particular matter is pointed out as tending to show that any such evidence in this case might have been prejudicial. It is true that it is shown that she was arrested shortly after the crime, near the scene of its commission in Jack Nahlan's car, in which was his cap and coat, and it is also in evidence that, in answer to questions asked her, she made evasive and compromising answers.

These were the only matters, occurring after the crime, of any real import, proved in this case, as incidents of conduct of the appellant. These matters separated from other facts proved very little, but, as explanations of the conduct of Nahlan and the appellant, they were somewhat illuminating.

Pertinent facts in this case were to the effect that Cecil Chamness who ran a little store and filling station at Quitman, was robbed of $200 on the night of November 11. He recognized Jack Nahlan as one of the persons robbing him. The other man he did not know. Beulah Kelly, the appellant, here, had formerly lived near Quitman, but had been away for a long period of years until a short time before this robbery, and on the night of the 8th of November, three days prior to the robbery, she and Jack Nahlan had stopped at the filling station or store, belonging to Chamness, for a short time.

A few days before the robbery, Jack Nahlan and this appellant, riding together in the same car, took Tommie Sanders, a man about thirty years old, a nephew of the

appellant, for a short ride, and Jack Nahlan said to him, in the presence of the appellant: "I know Chamness has got some money, and we are going to get it. We have done this kind of work before and got away with it, and, if you tell it, it will be too bad for you."

Mrs. Kelly did not say a word, as disclosed by this record. She did not disclaim the intention of helping to rob Chamness. Perhaps it was not necessary that she should have done so. However, on the night of the robbery, Will Spain testified that he was living about two and a half miles from Quitman on Highway No. 25; that he saw a car pass; it was a four-door Chevrolet Sedan. It was going toward Quitman. This was about 8 or 9 o'clock. It was going at a slow gait, but in about fifteen minutes it was coming back, driven at rather a fast rate. He does not know who was in the car. He was fifteen or twenty steps from the car and could not say it was the same car he saw going toward Quitman that he saw returning. He called Chamness, however, and advised him to get on the road if he wanted to catch the people who had robbed him. Officers had become very busy in a search for the robbers, and the sheriff and posse discovered a car upon the highway, which stopped as the sheriff approached. In this car, so parked upon the highway, the appellant was found, with the cap and coat and sawed-off hacksaw, which she said belonged to Jack Nahlan. She readily admitted that the car in which she was riding was Nahlan's car. She claimed at the time that it was out of repair, and that she could not drive it. The sheriff found nothing wrong with it, took charge of the car, and placed the appellant under arrest.

Immediately following this arrest, she told the officers who asked her questions, if they wanted to know anything about the case to go to Jack; that her life had been threatened, and she wasn't going to tell it. She further said: "Go to Jack, he will tell you. If I tell it, they will kill me." She admitted that she had driven up to Quitman and had been there that night. It was also a significant fact and circumstance that just prior to the time she was arrested, but after she had stopped the car upon the highway, and as the officers' car approached, the

door of the car, occupied by the appellant, was heard to slam or close.

It was not suggested by any witness that Jack Nahlan had made a sudden escape from this car and thereby eluded the officers at this point, but it was not an unreasonable inference to be drawn from the testimony; particularly is this true when we consider that the appellant was driving his car only a short distance from the scene of the robbery, and that there was found in the car, at the time, a coat and cap belonging to Nahlan. For several days immediately prior to the robbery, Nahlan and the appellant had been frequently seen together in the immediate vicinity of Chamness' place of business at Quitman.

There were other facts offered in evidence unnecessary to set out, but these salient statements of the testimony, when considered with the appellant's half admissions and evasive answers, justified the jury's verdict.

The following quotation settles this controversy:

"The conviction of the principal is *prima facie* evidence of his guilt on the trial of an accessory before the fact of the crime, but the record of the conviction does not exclude other competent evidence of the guilt of the principal, nor does it prevent the dispute of such record collaterally on the issue of the guilt of the accessory. *State* v. *Mosley,* 31 Kan. 357; 1 Wharton, Criminal Law, p. 350. At the common law, the record of the conviction, if it had transpired, could not be dispensed with, but under the statute (§§ 1560-1, Kirby's Digest), an accessory before the fact of the crime of murder "shall be deemed in law a principal, and be punished accordingly," although he must be indicted as such accessory, and cannot be charged as a principal offender. *Hunter* v. *State,* 104 Ark. 245, 149 S. W. 99. And the common law relating to the trial and conviction of such accessory has also been changed, it now being provided that "An accessory before or after the fact may be indicted, arraigned, tried and punished, although the principal offender may not have been arrested and tried, or may have been pardoned or otherwise discharged." Section 1566,

Kirby's Digest. *Jones* v. *State,* 108 Ark. 447, 450, 158 S. W. 132; *Tiner* v. *State,* 110 Ark. 251, 161 S. W. 195.

The third question raised upon this appeal is that the court erred in refusing to direct a verdict for the defendant. In other words, appellant insists that the testimony is insufficient to sustain the conviction. Upon this proposition it may be conceded that there is no direct or positive testimony upon which this conviction was based. The evidence is circumstantial. Most of the facts have already been stated. We feel that the facts, tending to prove the guilt of the defendant, even though they be highly circumstantial, are so connected and related that the jury was thoroughly warranted in arriving at a conclusion of the appellant's guilt. The facts established by the evidence are not disconnected and unrelated incidents that might or could have occurred under ordinary conditions without connecting appellant with the commission of this offense. When Nahlan was telling her nephew in her presence that they intended to rob Chamness, she made no protest as to any statement he made. She was, at least, lending her influence and encouragement at that particular time to the scheme or plan that had already been made according to Nahlan's statement, and she did not deny that she had been associated in former and similar schemes. She made no satisfactory explanation of her presence in the immediate community immediately after the robbery, when in possession of Nahlan's car, his cap and coat being therein as if he had, but a short time before, left them. Her lack of candor, when she would talk, though she could not reasonably have been required to do so, were inconsistent with innocence. The matter was a case for the jury, and we are unwilling to say that the decision was incorrect.

It follows therefore that judgment should be affirmed. It is so ordered.